# UNITED STATES DISTRICT COURT
# FOR
# THE SOUTHERN DISTRICT OF TEXAS

ANDRE LEWIS,
Plaintiff,

v.

LAZ PARKING LLC,
Defendant.

United States Courts
Southern District of Texas
FILED

*09/23/2024*

Nathan Ochsner, Clerk of Court

**Case No.**

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR VIOLATIONS OF FMLA, ADA, AND EMPLOYMENT DISCRIMINATION LAWS

## JURY DEMAND ENDORSED HEREIN

Plaintiff Andre Lewis ("Plaintiff"), pro se litigant, hereby files this Complaint against Defendant Laz Parking ("Defendant") and alleges as follows:

## I. INTRODUCTION

In a world where fairness and justice are expected to guide the helm of employment practices, Laz Parking starkly deviated from these principles in its treatment of Mr. Andre Lewis. Hired with promises of leadership and growth, Mr. Lewis not only met but exceeded the rigorous demands of his role as Director of Operations. Despite his exemplary performance, including significantly boosting profitability and operational efficiency across multiple locations, Mr. Lewis faced a series of discriminatory and retaliatory actions that culminated in his forced resignation.

Laz Parking was well aware of Mr. Lewis's outstanding contributions and the challenges he bravely faced, including his battle with a severe autoimmune disease. Instead of accommodating his medical needs as legally required, they chose to punish him for advocating for fair treatment and equal opportunities within the company. This pattern of

misconduct—ignoring Mr. Lewis's complaints of discrimination and harassment, sidelining him through demotions, and ultimately orchestrating his exit under the guise of fabricated allegations—demonstrates a deliberate and reprehensible disregard for both the law and basic human decency. The actions taken by Laz Parking not only shattered the career and aspirations of Mr. Lewis but also stand in stark violation of multiple employment laws designed to protect workers like him.

## II. JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims presented arise under the Constitution, laws, or treaties of the United States. Additionally, jurisdiction is conferred by 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

This Court has personal jurisdiction over the parties in this case because the defendant is domiciled in the State of Texas and the events giving rise to the plaintiff's claims occurred within this district. Furthermore, the defendant has substantial contacts with this forum, sufficient to satisfy the requirements of due process and the Texas Long Arm Statute, thereby permitting this Court to exercise personal jurisdiction. This court further has jurisdiction under The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act(EFAA) 9 U.S. Code § 401 & 9 U.S. Code § 402

## III. PARTIES

Plaintiff, Andre Lewis, is an individual with a domicile in the State of Texas. The address of the Plaintiff is 707 Saulnier St, Houston TX 77019.

Defendant, Laz Parking, is a corporation with its principal place of business in the State of Connecticut. The address of the Defendant is One Financial Plaza 14th Flr, Hartford CT 06103.

## IV. GENERAL ALLEGATIONS

On or about May 22nd, 2022, Andre Lewis was contacted by Sue Keenan regarding the Open Director of Operations (DOO) position at Laz Parking.

After a comprehensive interview process, Mr. Lewis was offered the Director of Operations Hospitality position in Houston by Laz Parking on July 15th, 2022, and received a $3,000 bonus for moving expenses.

Mr. Lewis commenced his employment in Houston on August 1, 2022, and was initially assigned to train at TMC with Zach Eggman due to the absence of James Hughes.

Despite being hired as the Director of Operations for Hospitality, Mr. Lewis was tasked with overseeing multiple locations including the Crowne Plaza Hotel, Baylor St. Luke Hospital, City Centre, and Century Square due to limited hospitality locations in Houston.

Within a month of his employment, the Director of Operations for Healthcare was hired, and the hospital location was reassigned, leaving Mr. Lewis with three locations.

In his capacity, Mr. Lewis collaborated with the General Manager of the Crowne Plaza to initiate a new Shuttle Service for medical patients, which involved him traveling to Los Angeles to facilitate the transfer of a shuttle van.

On or about November 15th, 2022, Mr. Lewis and Zach Stewart reported to Human Resources and senior leadership about racist and discriminatory remarks made by the property manager at Autry Park, leading to an investigation and subsequent termination of the relationship with the property manager.

Following the resignation of Zach Stewart, Mr. Lewis was given the responsibility to hire a new Manager for the Crowne Plaza. Opting to manage the location directly, Mr. Lewis's management led to substantial financial improvement, turning a projected loss into significant profits over two years.

In February 2023, Mr. Lewis was reassigned to oversee operations at Baylor St. Luke's Hospital due to his extensive experience in valet services, where he significantly improved the financial and operational performance of the location.

Around March 2023, Mr. Lewis was required to cover shifts at Century Square due to an insurance issue with a third-party agency, a task that involved significant travel and time commitment.

On or about August 31st, 2023, Mr. Lewis filed a complaint regarding inappropriate advances from a fellow employee at Baylor St. Luke, which was not adequately

addressed by HR, leading to his removal from overseeing the location shortly after his complaint.

In September 2023, Mr. Lewis single-handedly managed the opening of the C. Baldwin Hotel parking operations, including hiring staff and procuring necessary equipment and vehicles, due to the unavailability of other managers.

During a dinner in September 2023, Mr. Lewis expressed discomfort with inappropriate discussions by senior leaders and highlighted financial concerns regarding the underwriting process of a new contract, which were ignored.

In December 2023, Mr. Lewis received a reduced Christmas bonus, which he contested. After discussions, it was acknowledged that his performance merited a full bonus, and he was compensated accordingly.

On or about January 25th, 2024, changes in management at the C. Baldwin Hotel were made without Mr. Lewis's input, and a new manager was appointed who resigned shortly after his hiring.

Mr. Lewis managed the opening of the Thompson Hotel on February 14th, 2024, which was recognized as a significant success.

In March and April of 2024, Mr. Lewis faced operational challenges at The Baldwin and was involved in the hiring process, during which he advocated against discriminatory practices.

Mr. Lewis communicated to HR and senior leadership about discrimination and requested accommodations for his disability, which were not addressed satisfactorily.

In May of 2024, despite securing additional contracts for Toca Madera restaurant, Mr. Lewis was not rewarded as promised.

On or about July 8th, 2024, after a series of managerial challenges and personal health issues exacerbated by workplace stress and discriminatory practices, Mr. Lewis was informed of changes to his role without proper communication or justification.

Mr. Lewis's repeated reports of harassment and discrimination were met with threats of termination and were followed by actual retaliatory actions including demotion and eventual forced resignation under duress, coinciding with his planned medical leave.

The actions taken against Mr. Lewis by Laz Parking constitute violations of employment law, including but not limited to FMLA, ADA, and anti-discrimination statutes.

## V. COUNT ONE: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT (FMLA)

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

At all relevant times, Plaintiff was an employee of Defendant, Laz Parking, which is an employer as defined under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.

Plaintiff was employed by Defendant for more than 12 months and had worked more than 1,250 hours during the 12-month period preceding the start of the requested FMLA leave.

Plaintiff provided timely notice to Defendant of his need to take FMLA leave. Specifically, on August 2, 2024, Plaintiff requested FMLA and Short-term disability information to address both medical and mental health issues, and subsequently submitted the necessary FMLA forms on August 6, 2024, indicating a start date of September 5, 2024, for his FMLA leave.

Plaintiff's request for FMLA leave was made to address serious health conditions that rendered him unable to perform the functions of his position, including severe symptoms associated with an Auto Immune Disease, which include but are not limited to brain fog, joint and muscle pain, irritable bowel syndrome, and heat intolerance.

Despite Plaintiff's compliance with FMLA requirements and his entitlement to take FMLA leave, Defendant engaged in actions that interfered with or denied Plaintiff's FMLA rights. Specifically, shortly after Plaintiff's FMLA request, on August 28, 2024, while Plaintiff was on approved PTO and less than a week before his scheduled FMLA leave, Defendant initiated a pretextual disciplinary process against him, which culminated in a forced resignation or involuntary termination threat, thereby constructively discharging him.

The timing and nature of Defendant's actions, including the forced resignation and the denial of Plaintiff's role and responsibilities, suggest retaliation for Plaintiff's exercise of his FMLA rights.

As a result of Defendant's unlawful interference with Plaintiff's FMLA rights and retaliation against Plaintiff for attempting to exercise those rights, Plaintiff has suffered

damages including loss of income, benefits, and professional reputation, as well as emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant for violation of the FMLA, including but not limited to back pay, front pay, liquidated damages, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## VI. COUNT TWO: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

Plaintiff Andre Lewis ("Plaintiff") was an employee of Defendant Laz Parking ("Defendant"), which is a covered entity under the Americans with Disabilities Act, 42 U.S.C. § 12111(2).

Plaintiff was a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12111(8). Plaintiff suffers from a severe case of Auto Immune Disease, which substantially limits one or more of his major life activities, including but not limited to experiencing brain fog, joint and muscle pain, irritable bowel syndrome, and heat intolerance.

During his employment, Plaintiff requested reasonable accommodations for his disability from Defendant, including the consideration for remote or traveling positions that would mitigate his exposure to conditions exacerbating his disability.

Despite being aware of Plaintiff's disability and his request for accommodations, Defendant failed to engage in an interactive process to determine appropriate reasonable accommodations for Plaintiff. Instead, Defendant assigned Plaintiff to manage the River Oaks Shopping Center, a location requiring extensive outdoor presence, which posed a significant risk to Plaintiff's health given his heat intolerance.

Defendant's failure to accommodate Plaintiff's disability and the requirement for him to work under conditions that aggravated his health issues constitute a failure to provide reasonable accommodation under the ADA.

Furthermore, Plaintiff's removal from overseeing properties, demotion in responsibilities, and the subsequent forced resignation were actions taken shortly after Plaintiff's disability accommodation requests, indicating that these adverse employment actions were in

retaliation for requesting accommodations, in violation of the ADA, 42 U.S.C. § 12203(a).

The adverse actions taken by Defendant, including but not limited to the demotion, the change in job responsibilities, and the forced resignation under the threat of termination, were directly related to Plaintiff's disability and requests for accommodation, and not due to any legitimate business necessity asserted by Defendant.

As a direct and proximate result of Defendant's actions, Plaintiff suffered damages including emotional distress, loss of income, and benefits, for which he is entitled to compensatory damages under the ADA.

WHEREFORE, Plaintiff demands judgment against Defendant for violation of the ADA, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## VII. COUNT THREE: DEFAMATION OF CHARACTER

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

Defendant made a false and defamatory statement concerning the Plaintiff.

On or about August 31st, 2023, an employee at Baylor St. Luke, after being reported by Plaintiff for making inappropriate advances, retaliated by falsely accusing Plaintiff of making uncomfortable advances towards another employee at the Crowne Plaza, suggesting Plaintiff asked the employee to go for drinks in a manner that made her feel uncomfortable.

Futhermore, after Mr. Lewis's departure from Laz, Laz was contacted by a potential employer and after that conversation, the potential employer withdrew the employment offer based on statements made by Laz parking.

The false statement was unprivileged.

The statement was published to a third party, in that the employee communicated these allegations to a front desk agent at the Crowne Plaza, who was not involved in the initial complaint.

The content of the statement was such that it would tend to injure Plaintiff's reputation in the eyes of a reasonable person, suggesting professional misconduct and inappropriate behavior.

The publication of the statement caused damage to Plaintiff's reputation, as evidenced by the immediate removal of Plaintiff from overseeing the Baylor St. Luke location, a decision made within days of the defamation, impacting Plaintiff's professional standing and responsibilities.

Defendant acted at least negligently in making these statements.

As a direct and proximate result of the defamatory statements made by Defendant, Plaintiff suffered damages including but not limited to emotional distress, damage to reputation, and loss of professional opportunities.

WHEREFORE, Plaintiff demands judgment against Defendant for defamation, including but not limited to compensatory damages, punitive damages, and any other relief this Court deems just and proper.

## VIII. COUNT FOUR: HOSTILE WORK ENVIRONMENT

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

To establish a claim for a hostile work environment under federal law, the plaintiff must show that the work environment was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

Mr. Lewis was subjected to repeated inappropriate sexual advances by a male employee at Baylor St. Luke, including comments about Mr. Lewis being "a snack" and physical gestures like licking lips and sticking out the tongue, which were both severe and humiliating, contributing to a hostile work environment.

The same male employee attempted to retaliate against Mr. Lewis by suggesting to another employee that they should feel uncomfortable and file a complaint against Mr. Lewis, further evidencing the hostile nature of the environment created by the actions and comments directed at Mr. Lewis.

Despite Mr. Lewis's complaints about these behaviors to HR, no effective action was taken, demonstrating the employer's tacit acceptance of this hostile environment.

Mr. Lewis was removed from overseeing Baylor St. Luke shortly after his complaint, an action that suggests retaliation and a continuation of the hostile environment.

Mr. Lewis faced additional hostility when he was excluded from emails and meetings, directly undermining his role and isolating him from managerial communications, which are essential for his position.

The actions of Nick Kyltta, who provided conflicting instructions to other managers and excluded Mr. Lewis, were both undermining and humiliating, contributing further to the hostile work environment.

Senior leader Kynn Knight's comments during a meeting, referring to Mr. Lewis as "intense" in a context that suggested a racial undertone, and subsequent threats of termination, intensified the hostility of the work environment.

Mr. Lewis's medical condition was mocked by Nick Kyltta, further evidencing the discriminatory and hostile nature of the work environment.

The drastic measure of prohibiting Mr. Lewis from contacting any manager, valet, or staff at the Baldwin or Thompson, as well as engaging in personal conversations outside of work, unreasonably restricted his professional interactions and personal freedom, contributing to the hostile environment.

The culmination of these actions, including the forced choice between resignation and termination without a fair investigation into alleged misconduct, exemplifies the severe and pervasive hostile work environment endured by Mr. Lewis, which altered the terms and conditions of his employment at Laz Parking.

WHEREFORE, Plaintiff demands judgment against Defendant for creating and maintaining a hostile work environment, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## IX. COUNT FIVE: WRONGFUL TERMINATION

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

Under federal and Texas law, a claim for wrongful termination exists where an employee is terminated from their employment under circumstances that are legally prohibited, such as discrimination, retaliation, or violation of specific legal protections afforded to the employee.

Plaintiff Andre Lewis was employed by Defendant,

Laz Parking, and was terminated from his employment under circumstances that violate these legal standards.

Mr. Lewis consistently performed his duties satisfactorily and often exceeded the expectations of his role as evidenced by his management of multiple locations, initiation of profitable projects, and positive feedback from superiors on various occasions.

Despite his satisfactory performance and positive contributions to the company, Mr. Lewis was subjected to a series of adverse employment actions culminating in his termination, following his engagement in protected activities, including but not limited to, filing complaints of discrimination and harassment, and reporting violations of company policy and law.

Specifically, Mr. Lewis made multiple complaints to human resources and senior leadership about discriminatory practices, harassment, and retaliation he faced or observed in the workplace, which are protected activities under federal and Texas law.

Following these complaints, Mr. Lewis experienced immediate and continuous retaliatory actions from the Defendant, including but not limited to, being stripped of his managerial responsibilities, exclusion from meetings, being subjected to disparaging comments, and ultimately his termination.

The timing and nature of these retaliatory actions demonstrate a direct causal link between Mr. Lewis's complaints and the adverse employment actions taken against him, including his termination.

Mr. Lewis's termination was effectuated under the pretext of performance issues and restructuring; however, these reasons are unsubstantiated by his employment record and appear to be pretexts for unlawful retaliation.

Furthermore, Mr. Lewis was terminated shortly after he had requested FMLA leave and had disclosed his intention to seek legal counsel regarding his concerns at the workplace, which further evidences the retaliatory motive of his termination.

The termination of Mr. Lewis's employment was not for legitimate business reasons but was a direct result of his engagement in protected activities, his reports of illegal and unethical behavior within the company, and his efforts to assert his legally protected rights.

As a result of the wrongful termination, Mr. Lewis has suffered damages including but not limited to loss of income, benefits, emotional distress, and damage to his professional reputation.

WHEREFORE, Plaintiff demands judgment against Defendant for wrongful termination, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## X. COUNT SIX: WRONGFUL DEMOTION

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

In Texas, a claim for wrongful demotion is established when an employee can demonstrate that the demotion occurred under circumstances that violate explicit state or federal laws, including anti-discrimination statutes, or under conditions that breach the terms of an employment contract or an implied contract.

Plaintiff Andre Lewis was employed by Defendant Laz Parking, where he consistently performed his duties satisfactorily and met the reasonable expectations of his employer.

On or about August 16, 2024, Plaintiff was informed by Defendant's Regional Director of Operations, Nicholas Kyltta, and subsequently by HR, that his responsibilities were substantially reduced, removing his oversight from key properties including the C. Baldwin and Thompson Hotels, which significantly diminished his authority and the scope of his role within the company.

This reduction in Plaintiff's duties and responsibilities occurred shortly after Plaintiff had made multiple complaints regarding discriminatory practices, harassment, and other workplace issues, suggesting a retaliatory motive behind the demotion.

Despite assurances from senior management that Plaintiff's title and salary would remain unchanged, the significant reduction in his responsibilities effectively altered the terms and conditions of his employment, constituting a demotion.

The demotion of Plaintiff was not based on a lack of skill, performance issues, or legitimate business reasons but was instead influenced by Plaintiff's protected activities, including his complaints regarding workplace discrimination and harassment, and his advocacy for fair treatment of himself and others.

The actions of Defendant, as directed by Kynn Knight and other senior leadership, in reducing Plaintiff's responsibilities because of his complaints and protected activities, violate the principles of fair employment practices and are indicative of retaliatory demotion.

The wrongful demotion of Plaintiff has caused him significant professional harm, emotional distress, and financial loss due to the reduced potential for career advancement and the hostile work environment created by Defendant's actions.

Plaintiff's demotion under these circumstances was unwarranted, unjustified, and constitutes a wrongful demotion in violation of applicable employment laws and the implied contract of fair dealing and good faith between Plaintiff and Defendant.

WHEREFORE, Plaintiff demands judgment against Defendant for wrongful demotion, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## XI. COUNT SEVEN: UNPAID WAGES

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

Under the Fair Labor Standards Act (FLSA), an employer is required to pay its employees for all hours worked and at the agreed-upon rate.

Mr. Lewis was employed by Laz Parking, which agreed to pay Mr. Lewis a salary, as well as bonuses and other compensation as part of his employment agreement.

Mr. Lewis fulfilled all his duties and responsibilities as stipulated in his employment agreement, often exceeding the standard expectations by taking on additional tasks and

responsibilities, including stepping in to manage multiple locations and resolving operational issues without additional compensation.

Despite the agreement and Mr. Lewis's extensive contributions to Laz Parking, Laz Parking failed to pay Mr. Lewis the full bonus he was promised and earned for the year 2023, specifically withholding 4% of his entitled bonus, which amounts to unpaid wages.

Mr. Lewis reported the underpayment to HR and was informed by Zach Eggman and Cornelius Thompson that the reduction was instructed by Kynn Knight, despite acknowledging Mr. Lewis's exceptional performance.

Further, Mr. Lewis was promised an additional bonus for his substantial contributions to the Century Square project by James Hughes, which was acknowledged verbally but was never disbursed. He was also promised a commission for his work in securing new contracts related to the Allen Pavilion.

The failure to pay Mr. Lewis the promised bonuses constitutes a breach of the terms of his employment and the failure of Laz Parking to compensate him for his labor as agreed upon in his employment terms.

This failure to pay the agreed-upon wages and bonuses has caused Mr. Lewis financial harm and distress, for which he seeks redress through this claim.

WHEREFORE, Plaintiff demands judgment against Defendant for unpaid wages, including but not limited to back pay, liquidated damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## XII. COUNT EIGHT: SEXUAL HARASSMENT

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

Under federal law, specifically Title VII of the Civil Rights Act of 1964, an actionable claim of sexual harassment exists when one can demonstrate that the harassment was of a nature that it affected the terms, conditions, or privileges of employment.

Plaintiff alleges that during his employment, he was subjected to unwelcome sexual advances and comments by a male employee at Baylor St. Luke, which were severe and pervasive enough to create a hostile and abusive working environment.

Specifically, the male employee made repeated and unsolicited sexual remarks towards Plaintiff, including comments such as "Andre's a snack, I want some of that," accompanied by inappropriate gestures like licking of the lips and sticking out of the tongue.

These comments and behaviors occurred on multiple occasions and in the presence of other employees, thereby publicly humiliating and demeaning Plaintiff, contributing further to the hostile work environment.

Plaintiff reported these incidents to Human Resources in or around August 31, 2023, expecting a prompt and appropriate response to address and rectify the situation as mandated by company policy and federal law.

Contrary to the expectations set forth by Title VII's guidelines for employers to take immediate and corrective action upon notification of harassment, Human Resources failed to take adequate measures to investigate or remedy the situation after Plaintiff's initial complaint.

Following Plaintiff's report of sexual harassment, rather than receiving support and corrective action from his employer, Plaintiff experienced retaliatory behavior, which included being removed from overseeing Baylor St. Luke's location shortly after his complaint, indicative of a failure by the employer to provide a safe and respectful workplace environment.

The lack of action and subsequent retaliation by the employer not only perpetuated the hostile work environment but also signaled a disregard for federal regulations designed to protect employees from sexual harassment.

These actions, or lack thereof, by the employer significantly affected the terms and conditions of Plaintiff's employment, leading to a detrimental impact on his professional responsibilities and mental health. This further affected Mr. Lewis's job performance, as he would avoid going to the location on a daily basis to avoid the employee.

Plaintiff's experiences of sexual harassment and the employer's subsequent failures to address and rectify these issues directly contravene Title VII of the Civil Rights Act of 1964, which aims to protect employees from discrimination and harassment in the workplace based on sex, among other protected characteristics.

WHEREFORE, Plaintiff demands judgment against Defendant for sexual harassment, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## XIII. COUNT NINE: DISCRIMINATION

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

Plaintiff, Mr. Andre Lewis, is a member of a protected class under Title VII as he is an African American.

Defendant, Laz Parking, subjected Mr. Lewis to adverse employment actions.

On or about November 15th, 2022, Mr. Lewis and a colleague reported to HR and senior leadership that the property manager for Autry Park made racist and discriminatory comments about Mr. Lewis and other minorities. Despite the investigation confirming these allegations, the subsequent decisions and actions taken by Laz Parking towards Mr. Lewis suggest a discriminatory motive tied to his race.

Following his complaint about racial discrimination, Mr. Lewis experienced a series of adverse employment actions including, but not limited to, being removed from overseeing key locations, exclusion from decision-making processes, and being subjected to derogatory comments and treatment that his non-minority colleagues did not experience.

Mr. Lewis was further discriminated against based on his disability, in violation of the Americans with Disabilities Act (ADA). Despite Laz Parking's awareness of Mr. Lewis's severe case of Auto Immune Disease, which qualifies as a disability under the ADA, they failed to accommodate his condition and instead placed him in positions that exacerbated his health issues.

Laz Parking's failure to accommodate Mr. Lewis's disability and the subsequent demotion and forced resignation he experienced are indicative of discriminatory practices based on his disability status.

The pattern of adverse actions following Mr. Lewis's complaints about discrimination and his request for disability accommodation, including his exclusion from overseeing properties, the withholding of bonuses despite exemplary performance, and the ultimate forced resignation, constitute retaliation and a hostile work environment under Title VII and the ADA.

The actions and treatment directed towards Mr. Lewis were less favorable compared to the treatment of similarly situated employees who were not members of the same protected racial and disability classes as Mr. Lewis.

The conduct of Laz Parking, through its agents and employees, was intentional, willful, and taken with malice or with reckless indifference to the federally protected rights of Mr. Lewis.

WHEREFORE, Plaintiff demands judgment against Defendant for discrimination, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## XIV. COUNT TEN: HARASSMENT

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

Under federal and Texas law, a claim for harassment requires the plaintiff to demonstrate that the defendant's conduct was unwelcome, based on the plaintiff's protected class, and so severe or pervasive that it altered the conditions of employment and created an abusive working environment.

Plaintiff Andre Lewis alleges that the conduct he experienced was unwelcome. Specifically, Mr. Lewis was subjected to bullying intimidation and undermining by Nicholas Kyltta.

The harassment Mr. Lewis experienced was based on his protected class. The inappropriate comments were directed towards Mr. Lewis because of his race, implicating protected class status under federal and Texas anti-discrimination laws.

The harassment was severe or pervasive enough to alter the conditions of Mr. Lewis's employment and create an abusive working environment. This is demonstrated by Mr.

Lewis's need to file a complaint with HR, and the subsequent retaliatory actions that followed his complaint, including his removal from overseeing the location.

Further exacerbating the hostile work environment, after Mr. Lewis filed a complaint against Nicholas for harrasmment, the same employee who harassed him, the same employee was given his locations to oversee.

The cumulative effect of these actions, including the lack of appropriate response from HR and the continued exposure to the harasser and retaliatory conduct by other employees, supports Mr. Lewis's claim that the harassment he experienced was severe and pervasive, altering his working conditions to the point where his work environment became hostile and abusive.

As a direct and proximate result of the harassment, Mr. Lewis suffered significant distress, anxiety, and professional harm, impacting his ability to perform his job duties effectively and contributing to his eventual forced resignation under duress.

WHEREFORE, Plaintiff demands judgment against Defendant for harassment, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## XV. COUNT ELEVEN: INTIMIDATION

Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

Under Texas law, a claim for intimidation requires the plaintiff to establish that the defendant engaged in conduct that involved the use of force, or threat of force, which was intended to cause fear or coerce the plaintiff's actions.

Defendant Kynn Knight, by stating that either Andre works together with Nick on the Baldwin, or he would be forced to make a decision that Andre won't like, intentionally used threats of adverse employment actions to coerce Mr. Lewis into compliance with unwarranted directives, thereby fulfilling the element of using threats to induce fear or coerce actions.

Furthermore, the actions of Nicholas Kyltta, as directed by senior management, which included giving opposing instructions to undermine Mr. Lewis and excluding him from communications intentionally, were aimed at intimidating Mr. Lewis. These actions were

designed to marginalize and isolate him, thereby inducing stress and fear, fulfilling the element of using force or threat to intimidate.

The statement by HR that Mr. Lewis does not have a "leg to stand on" after his complaints, coupled with the subsequent drastic changes to his responsibilities and the barring of his interactions with other staff, were clear coercive tactics intended to intimidate Mr. Lewis into silence or acceptance of his diminished role, thereby meeting the requirement of coercion through intimidation.

The culmination of these actions in the forced choice between resignation or termination, especially after Mr. Lewis had sought FMLA leave and reported various grievances, was a definitive act of intimidation. This act was intended to instill fear of wrongful termination, pushing Mr. Lewis to resign under duress rather than face an involuntary termination.

WHEREFORE, Plaintiff demands judgment against Defendant for intimidation, including but not limited to compensatory damages, punitive damages, and any other relief this Court deems just and proper.

## XVI. DEMAND FOR RELIEF

WHEREFORE, Plaintiff, Andre Lewis, respectfully requests that this Court:

a. Grant judgment in favor of Plaintiff on all claims for wrongful termination, wrongful demotion, unpaid wages, discrimination, harassment, intimidation, sexual harassment, violation of the Family and Medical Leave Act (FMLA), violation of the Americans with Disabilities Act (ADA), defamation of character, and hostile work environment;

b. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

c. Order the removal of any disciplinary actions, poor performance evaluations, performance improvement plans from Mr. Lewis' personnel file, and any indications that Mr. Lewis was terminated or eliminated from his position with Laz Parking;

d. Award Plaintiff compensatory damages for loss of back pay and fringe benefits, and punitive damages in an amount to be determined at trial;

e. Enjoin Defendant from engaging in further discriminatory, retaliatory, and harassing actions;

f. Award Plaintiff a positive letter of recommendation from Defendant;

g. Award Plaintiff reimbursement of attorneys' fees and costs associated with this litigation;

h. Grant Plaintiff the maximum economic, non-economic, actual, statutory, emotional, general, punitive, and other damages available under the law;

i. Award such other and further relief as this Court deems just and proper.

**JURY DEMAND**

PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL TRIABLE MATTERS.

Respectfully submitted,